[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, in these consolidated matters, was the owner of four parcels of real estate which had been mortgaged to the defendant, Derby Savings Bank ("Bank"). The plaintiff, in conjunction with the aforesaid mortgages, executed and delivered to the Bank an assignment of leases.
Foreclosure proceedings were commenced, and the Bank exercised its rights under the assignment of leases. At the conclusion of the foreclosure proceedings, three of the four properties were returned to the Bank, and the Bank took title to the remaining property.
These lawsuits involve claims only as to the three properties returned to the plaintiff.
The claims made by the plaintiff in its amended three count complaint allege as follows:
First Count — The Bank and its agents, defendants Collect Associates, Frank Pagliaro, Robert Pagliaro and Paul V. Pontillo failed to carry out their responsibilities under the terms of the assignment of lease in that they failed to act reasonably during the period of their contract.
Second Count — Defendants trespassed upon other property owned by the plaintiff at 55 Osborne Street, Danbury.
Third Count — The claim is based on the Connecticut Unfair Trade Practices Act (CUTPA), Connecticut General Statutes § 42-110a
et seq., violations.
The evidence adduced at trial showed that, prior to the assumption of management duties by the defendants in August, 1992, the utilities were paid by the tenants. After August, 1992, the defendants started paying the utilities without an increase in the rentals. CT Page 9939
The plaintiff offered many exhibits to show the difference in the operation of the rental units before August, 1992, and after the assignment of rents were exercised by the defendants. Exhibit 5 indicated a per monthly differential of rental of $811 for a period of twenty-eight months. This, the plaintiff claims, translates into damages amounting to $17,219.
The defendants claim that the area was run down, and the rents collected were the absolute maximum under the circumstances.
As to the water and sewer bills, plaintiff's exhibit 3 and testimony given, indicated that prior to September, 1992, all water and sewer bills had been paid. The claimed total of unpaid bills is $27,783, which includes $3540 in interest and lien charges.
Finally, plaintiff's exhibit 4 attempts to indicate to the court that defendants paid $42,564 for utility bills which should have been paid by the tenants and neglected to pay (or collect) unpaid charges in the amount of $18,360.
The court will first direct its attention to the claim of fire damage, and the failure to file a claim. The evidence as to the monetary damages was, at best, sparce. The plaintiff has failed to convince the court that the damage amounted to $30,000. By its own admission, the defendants indicated that the damage was about $7000. The defendants had a duty to file a claim with the insurance company and failed to do so. The court awards to the plaintiff the sum of $7000, and orders the plaintiff to assign its insurance claim to the defendants so that it may pursue this claim if still valid.
As to the rentals, the plaintiff's expert, Mark Nolan, testified that in his opinion the failure of the defendants to pay water and sewer bills and metered electric bills constituted a breach of duty. The court was not overly impressed with the "expert" testimony of Mr. Nolan. His lack of specifics concerning the subject property and his failure to distinguish the difference between receiverships and assignment of rents rendered much of his testimony not relevant to the issue of negligence or breach of duty.
There is insufficient evidence to show that the assignees/defendants acted in a negligent manner as claimed. CT Page 9940
It must be remembered that the defendants assumed management of the units under foreclosure proceedings, which meant that the mortgagee was not being paid in accordance with the liens of the mortgage instrument. Also, the testimony indicated that the properties were in a distressed condition. Much work had to be done to make the premises tenantable.
Finally, paragraph 9 of the assignment of leases gives the assignee the discretion as to where rental payments are to be applied.
The court finds for the defendants as to count #1. It follows that the failure to prevail in count #1 defeats any recovery under CUTPA.
The court finds the issues as to the trespass claim in favor of the plaintiff, and orders the defendants to also pay the sum of $1790 presently in escrow, plus $330 in fees and $378 in costs of eviction.
Mihalakos, J.